RAFAEL COSTAS-PURCELL, Plaintiff and Appellant, *v.* MUNICIPALITY OF LAS MARÍAS, Defendant and Appellee.

No. 3926. Argued November 29, 1926.—Decided June 25, 1927.

*Antonsanti & La Costa* for the appellant. *Benet & Souffront* for the appellee.

Mr. Justice Wolf delivered the opinion of the court.

Rafael Costas Purcell sued the Municipality of Las Marías to recover the sum of $2,000 in payment of services rendered in the sale of municipal bonds. The supposed obligation of the municipality arose out of a written agreement made between the plaintiff and Don Eustaquio M. Gaztambide, Commissioner of Public Service, etc., of Las Marías, the position that corresponds to the office of mayor in former times. No question of the execution of the agreement arose. In actual fact, the alleged services were approved by the local authorities and payment ordered. Eventually the account was disapproved by the Auditor of Porto Rico. On appeal to the governor the latter did not review the findings or holdings of the said auditor, but left the appellant to his court remedies. In the suit that followed the District Court of Mayagüez decided against the plaintiff on various grounds.

The most important duty imposed by the alleged contract upon the appellant was couched in the following language: "That as agent of the Municipality of Las Marías he take charge of the execution (*tramitación*) and documentation of the loan of $70,000, the borrowing of which was agreed upon by the assembly, etc., except the sale of the bonds which shall take place at public auction."

The court found that substantially the only work that the plaintiff did under the contract was to furnish models of ordinances prepared by the Bureau of Municipal Affairs of the Treasury Department; that any other work that was

done in effecting the loan was performed by or was within the scope either of the officials of the municipality or of the government of Porto Rico; that the work done by the appellant that did not fall within the scope of the various public officials was done at the instance or in the interest of the buyers of the bonds, especially as the latter were to be sold and were sold at public auction, and that in no event did the services of the plaintiff amount in value to more than $100.

Likewise the court held that, given the little work that the plaintiff could or did perform for the Municipality of Las Marías, the contract executed was in fraud of the municipality. The court also held that the contract was *ultra vires;* that no contract could be made without the intervention of the Auditor of Porto Rico and his approval, and that no successful suit could be filed without making the auditor a party. The appellant assigns eighteen errors.

There is a line of cases which hold that where a contract with a municipality is declared void, nevertheless the plaintiff may recover for his reasonable services rendered, and perhaps the court below had this in mind when it declared that the services of the plaintiff were not reasonably worth more than $100. However, barring questions of *ultra vires* and the possible intervention of the auditor, fraud, and the like, so far as the court was holding that the plaintiff must in any case show the reasonable value of his services the court was in error.

The appellant, aided by his brother, took steps to effect the loan. The loan was effected and we can not say from the evidence that the services of the plaintiff in connection with the said loan were entirely negligible. We feel bound to hold as a matter of law that, given the wide generality of the contract, no great proof of services was necessary, always supposing that the contract made was a valid existing one and within the powers of the municipality. With these

reserves the plaintiff did not have to prove a *quantum meruit*. He had an express contract and there was a performance, even though helped by governmental agencies.

We are quite agreed with the court below that, if the services to be rendered by the plaintiff were of such a nature that they fell entirely within the line of duties imposed upon the municipal officials or other governmental officials, then a fraud was practiced upon the Municipality of Las Marías.

The court and the appellee lay great weight upon the following facts: That the brother of the plaintiff, between 1922 and 1924 and up to two months before the sale of the bonds in this case, was an officer of the government of Porto Rico; that he in point of fact was the officer under the auditor who had charge of the municipal loans, a part of whose duties imposed by the auditor was to aid the municipalities in every part of the documentation and accounting necessary for a loan, if not the execution thereof; that while the said brother was still in the auditor's office he rendered assistance to the appellant and that the said brother more or less conceived the idea of obtaining this and other contracts from municipalities who proposed to obtain loans.

This is a case where there is a fair probability that the services of the plaintiff were not very necessary, given the position taken and the offers of services made by the auditor's office as well as the rules promulgated by that officer. Nevertheless, given the very worst construction possible on the acts of said brother, the Municipality of Las Marías signed this contract with its eyes open.

Presumably the position of the officers of the municipality would be that here was a complicated loan to be put through and that the officers of the municipality were not experts in these matters and would need the services of some one who would take care of all the ''execution and documentation'' necessary for furthering the said loan. It is entirely con-

ceivable that the officers of the municipality thought that the plaintiff would aid them in securing bidders.

We quite agree with the court below, or the appellee, that the proposed services of the plaintiff were not strictly those of a regular broker inasmuch as the bonds were to be sold at public auction. Nevertheless, we hold, other services aside, that if the plaintiff or his agents did anything to obtain bidders or to facilitate the actions of bidders in presenting their bids, such actions on the part of the plaintiff constituted a compliance with the terms of the contract requiring that the plaintiff should take charge of the "execution and documentation" of the loan, and were similar to the services of a broker.

Perhaps the touchstone of this case is whether the plaintiff did any work which was not within the scope of governmental duties, and if he did then the element of fraud necessarily disappears from the case. If the plaintiff was instrumental in getting bidders or in aiding them to make their bids, this was part of the "execution" of a loan. We have no question that the auditor's office would and did aid prospective bidders, but such aid is no part of the official duties of the auditor's office. It is clearly not a part of the auditor's duties to find bidders. Let us see what the plaintiff did.

There was uncontradicted evidence tending to show that the appellant himself furnished information to persons interested in the purchase of bonds; that when the municipality or some of the officials thereof received requests for information from prospective buyers they transmitted the letters or requests to the appellant; that he had correspondence with newspapers advertising bonds, and that the bonds were advertised. The record tends to show that the appellant had quite a correspondence with a Mr. Thompson who was a lawyer who represented a house that ultimately bought the bonds, and the appellant also stated that in this

matter he had the assistance of his brother, Pedro Juan Costas. The latter said that he prepared the documents that the lawyers of the purchasers needed and requested in order that the latter might give their opinions in regard to the payments to be made for the bonds. He also testified that he made investigations for the purchasers in relation to the places where the money of the loan should be deposited, and incidentally obtained some advantages in the amount of interest to be paid, and that he was in continuous correspondence with the purchasers and the lawyers, trying to secure the prompt payment of the bonds; that among the documents that he prepared and were requested by the lawyers of the purchasers was a certified copy of all the proceedings which were adopted in the emission of the bonds by the municipality of Las Marías; that he took charge of the publication in the newspapers and that some of the publications were prepared by him and some by his brother Rafael, the appellant here. Both brothers testified that the principal work done by Pedro Juan Costas in the "execution" of the sale of these bonds was after he had left the office of the auditor.

These services, we hold, were entirely independent of any possible duties imposed upon any of the officers of the government. These services constituted a performance of the contract by themselves. We have not lost from view that the court below found that these services were done for the benefit of the purchasers of the bonds. There is the uncontradicted, direct testimony of the plaintiff and his brother to the contrary. Furthermore, given the nature of the contract in this case, any services rendered to the purchasers of the bonds were services rendered to the municipality. Such services were bound to facilitate and hasten the sale of the said bonds.

In addition to these services the evidence of the plaintiff tended to show that the appellant and his brother furnished various kinds of aid to the municipality in the sale of the

bonds; that they assisted the different officers of the government in various matters connected with the sale of the bonds. The court and the appellee insisted that the appellant did nothing to aid the municipality in preparing the ordinance for the sale of the bonds, nor for its approval by the Executive Council, the organism required by law to approve such ordinances. *Prima facie* this is probably true because the actual contract with the municipality was signed after the ordinance was passed. The appellant gives evidence tending to show that he assisted in the preparation of the ordinance, and even if the work antedated the signing of the contract it would not be a violent stretch to have it relate back.

However, it is strongly insisted that such services were properly services of the officers of the government. Some of the things done by the appellant or his brother probably did fall clearly within the duties devolving upon the various officers of the government. Nevertheless, there were other things done by them that did not clearly fall within the duties specified by law, even though, under various rules and regulations, either of the governor's or the auditor's office, the auditor's office or the Treasury Department stood ready to perform the work free of charge. But, if the municipality contracted with the appellant to do the same work that (although not a part of their legal duties) possibly could be done in the various governmental offices, there is nothing in the law that prevents the municipality from paying for services, even though they could be obtained free of charge. The municipality may have preferred to have its own agent instead of continuing to make requests of the governmental officers, especially for services that they were not by law bound to perform.

The appellee now alleges that the municipality had no power to authorize Mr. Gaztambide, the Commissioner of Public Service, etc., to make this contract with the appellant;

that part of the duties to be done by him devolved upon the mayor himself and that the ordinance passed by the municipal assembly should have itself fixed the terms of the contract and not have allowed the said commissioner a wide margin to fix the terms of the compensation to be paid to the appellant. We agree with the appellee that if there was no due authority there was no ratification possible in this case and none took place.

Short of an actual fraud, the commissioner was authorized by the ordinance to secure an agent and under this ordinance he had authority to agree to pay a reasonable amount. An unreasonable amount would be a fraud. We do not find that the payment of $2,000 for services to be rendered in securing a loan of $70,000 was unreasonable.

The authorities show that municipalities may make contracts of this kind. They may make brokerage contracts or may secure the services of an attorney. Dillon on Municipal Corporations, volume 1, section 244; *Mayor* v. *Sands,* 105 N. Y. 210; *Kramarath* v. *City of Albany,* 127 N. Y. 575, and other cases cited in the brief of appellant.

The work done by the appellant in this case was of a composite nature. In so far as he helped to secure bidders, his work was in the nature of a broker. In so far as he and his brother advised and helped the purchasers and the municipality in the sale of the bonds, the work was similar to that of an attorney.

We come then to the question whether the Municipality of Las Marías was authorized to make this contract. Section 37 of the Organic Act provides:

"That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities so far as may be necessary, and to provide and repeal laws and ordinances therefor; also the power to alter, amend, modify, or re-

peal any or all laws and ordinances of every character now in force in Porto Rico or municipality or district thereof in so far as such alteration, amendment, modification, or repeal may be consistent with the provisions of this Act.''

Under this Act, or under prior Acts of Congress, the Legislature of Porto Rico has authorized the municipalities to make contracts of various kinds.

Under the Municipal Act of 1921, laws of that year, p. 461, it is provided:

''Section 6.—That any municipal corporation desiring to contract indebtedness, borrow money or issue bonds on its own credit shall submit to the Executive Council of Porto Rico an ordinance duly adopted by the municipal assembly, which ordinance shall recite the circumstances rendering desirable the contracting of the indebtedness or of the loan, the amount of the same, the purpose or purposes to which it is to be devoted and shall provide for the discharge or repayment of the same with such interest and on such terms as the aforesaid assembly may determine.''

Thereunder the Municipal Assembly adopted an ordinance which provided in its section 14 as follows:

''The Commissioner of Public Service, Police and Prisons of Las Marías, Porto Rico, is hereby authorized to appoint some one to take charge of all matters in connection with this loan until the same shall be concluded.''

The ordinance as passed was approved by the Executive Council and had the effect of law and authorized the municipality through its commissioner to employ an agent.

The contract made in this case, therefore, falls within the class of contracts which the municipality is authorized to make.

The appellee does not convince us that a municipality may not make contracts to employ an agent to assist it in the sale of bonds even though those bonds are to be sold at public auction.

Under these circumstances any one who contracts with a municipality has a right to be paid. The court and the appellee rely on section 20 of the Organic Act to the contrary. It provides:

"That there shall be appointed by the President an auditor, at an annual salary of $5,000, for a term of four years and until his successor is appointed and qualified, who shall examine, audit, and settle all accounts pertaining to the revenues and receipts, from whatever source, of the government of Porto Rico and of the municipal governments of Porto Rico, including public trust funds and funds derived from bond issues; and audit, in accordance with law and administrative regulations, all expenditures of funds or property pertaining to or held in trust by the government of Porto Rico or the municipalities or dependencies thereof. He shall perform a like duty with respect to all government branches.

"  *       *       *       *       *       *       *

"It shall be the duty of the auditor to bring to the attention of the proper administrative officer expenditures of funds or property which, in his opinion, are irregular, unnecessary, excessive, or extravagant.

"  *       *       *       *       *       *       *

"The jurisdiction of the auditor over accounts, whether of funds or property, and all vouchers and records pertaining thereto, shall be exclusive. With the approval of the governor, he shall from time to time make and promulgate general or special rules and regulations not inconsistent with law covering the methods of accounting for public funds and property, and funds and property held in trust by the government or any of its branches; *Provided,* That any officer accountable for public funds or property may require such additional reports or returns from his subordinates or others as he may deem necessary for his own information and protection.

"The decisions of the auditor shall be final, except that appeal therefrom may be taken by the party aggrieved or the head of the department concerned within one year, in the manner hereinafter prescribed. The auditor shall, except as hereinafter provided, have like authority as that conferred by the law upon the several auditors of the United States and the Comptroller of the United States Treasury, and is authorized to communicate directly with any person

having claims before him for settlement, or with any department, officer, or person having official relations with his office.
" *      *      *      *      *      *      *

"In the execution of his duties the auditor is authorized to summon witnesses, administer oaths, and to take evidence, and, in the pursuance of these provisions, may issue subpoenas and enforce the attendance of· witnesses.

"The office of the auditor shall be under the general supervision of the governor and shall consist of the auditor and such necessary assistants as may be prescribed by law."

There is an apparent conflict between the provisions of section 37 and section 20 of the Organic Act. It is maintained that the auditor has some right of intervention in any contract for payment authorized by the municipality. The appellee says in its brief that "any person, for example the appellant, who desires to make a contract with any municipality, like the one before us, ought first to obtain the authorization of the auditor of Porto Rico, that is to say, the revision of such a contract by that officer in order that he may give his approval and adjudge of the validity of the contract."

We can not believe that it was the intention of Congress that any person who makes a contract with a municipality should first obtain the permission of the auditor to make the same. Will the persons who have bought bonds in Porto Rico under various laws made by the Legislature be subject to a revision of the validity of their contracts by the office of the auditor of Porto Rico? Must a proposed buyer of bonds first obtain the direct approval of the auditor? We feel bound to hold the contrary. Municipalities generally, when formed into bodies politic by the Legislature, within the scope of their authority have all the rights of contract that an individual may have.

It has always been understood that municipalities may so contract. It is inconceivable that in an act wherein

Congress has prescribed that the Legislature should pass no law which would interfere with the obligation of a contract should itself pass a law which would subject every person contracting with a municipality to the necessity of first obtaining the authority of a third person who is not one of the contracting parties.

We are most desirous in this case, in which neither The People of Porto Rico nor the auditor has been made a party, to refrain from placing any undue limitation on the powers and duties of the Auditor of Porto Rico. The appellant says that his duties are merely to "audit." We are not sure of the extension of this word and we are not satisfied that the auditor has not broader powers than a supposed mere audit.

However, there must be certain matters wherein the Legislature may act and money be appropriated and paid out under contracts or otherwise when the duties of the auditor become merely administrative or ministerial. In 19 R.C.L. 1045, the effect of the allowance or rejection of claims is discussed and the paragraph terminates with these words:

"There is less inclination on the part of the courts to apply the doctrine of res adjudicata to the disallowance of a claim as against the claimant than there is to its allowance as against the municipality, and the general rule is that so far as the claimant is concerned, the presentation of his claim is merely one of several steps required of him before he can enforce it against the municipality, and if the municipality, through its auditing board, disallows the claim, such disallowance does not preclude him from maintaining an action thereon in the courts."

We have the idea, until convinced to the contrary, that in a contract which has its inception under an act of the Legislature when all steps are complied with by the claimant, the intervention of the auditor is merely formal or ministerial.

This was apparently the opinion of the governor and the attorney general as shown by the letter of the governor on

page 138 of the record. It was in the nature of a contemporaneous construction which is always favored in law.

As to making the auditor a party, the foregoing considerations militate against such a necessity. The municipality has become like any other debtor. Of course before payment is made of a governmental or quasi governmental account the warrant of the auditor is necessary.

The judgment must be reversed and another rendered sustaining the complaint, with interest at the legal rate from its date and without costs.

Mr. Justice Hutchison took no part in the decision of this case.

Mr. Chief Justice Del Toro dissented.

DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO.

In my opinion the judgment appealed from should be affirmed.

I think that the Auditor of Porto Rico was a necessary party, as shown by the record and from the conclusions arrived at in the opinion of the majority.

Moreover, an examination of the evidence convinces me that the party really interested in the contract under consideration was not the plaintiff, but his brother Pedro Juan Costas who was filling the position of Chief of Division of Audits in the office of the Auditor of Porto Rico when the contract was entered into and began to be performed. The agent was not necessary. All of the help that he could lend to the municipality might and should have been given officially by the Auditor's office or any other office of the Government without any expenditure to be borne by the tax-payers. Under these circumstances, and the party really interested having taken advantage of his official position to further his own ends, I am of the opinion that the contract is tainted with fraud and can not support any claim.

In general terms I agree with the opinion delivered by the district court in support of its judgment.